Harold SHAFFER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 88–701(C)(2).

United States District Court, E.D. Missouri, E.D.

April 15, 1991.

Thomas P. O'Driscoll, Levin and Buchholz, P.C., St. Louis, Mo., for plaintiff.

Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

FILIPPINE, Chief Judge.

This matter is before the Court for a decision on the merits following trial to the Court. After consideration of the pleadings, the testimony and exhibits introduced at trial, the parties' briefs, and the applicable law, the Court enters the following memorandum which it adopts as its findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Harold Shaffer brings this action under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. (1986), against the John Cochran Division of the St. Louis Veterans Administration Medical Center (Medical Center).

On April 9, 1986, as a result of end stage renal disease, Mr. Shaffer underwent kidney transplant surgery at the Medical Center. Drs. Garvin and Doering and Mr. Mauller participated in this surgery. Several days later, a urine leak developed at the juncture between the ureter and the bladder, and Shaffer underwent a second surgery on April 16, 1986, which successfully repaired the leak. Dr. Casteneda performed this surgery. At some later point, Shaffer experienced right lower extremity pain and discomfort. Plaintiff had subsequent hospital admissions for various reasons and his leg pain was discussed and examined on several of these occasions. The problem with his right leg has persisted, worsened, and is presently diagnosed as neuropathy of the right lower extremity.

In his complaint plaintiff alleges that the urine leakage was the result of incomplete or inadequate suturing during the first surgery; that, as a result of the second surgery, the "tissue, muscles, and nerves of his abdomen, groin, buttock and right leg" were damaged causing plaintiff pain and suffering including the fact that his right leg is unable to properly support him; and, that the postoperative care given plaintiff was inadequate. In Counts I, IV, and VII, plaintiff claims relief on the grounds of "negligence-inadequate medical attention," as to the first operation, the second operation, and the postoperative care, respectively. In Counts II, V, and VIII, plaintiff asserts the alternative theory of medical malpractice for the same three occurrences. Finally, in Counts III and VI, plaintiff asserts claims of *res ipsa loquitar* as to the results of the first and second surgeries, respectively.

Plaintiff's alternative theories of negligence and medical malpractice each requires that the plaintiff establish that the personnel at the medical center breached their duty to plaintiff. In a medical malpractice action, that duty is to exercise "the degree of care, skill and proficiency which is commonly exercised by the ordinarily skillful, careful and prudent physician engaged in similar practice under the same or similar conditions." *Yoos v. Jewish Hosp. of St. Louis,* 645 S.W.2d 177, 183 (Mo.App. 1982). The duty plaintiff is asserting in his negligence claims is the duty to protect him from injury or harm. In neither, however, is there a presumption of negligence merely because of an untoward or adverse result. The plaintiff must prove deviation from requisite standard of care. *Miller v. Scholl,* 594 S.W.2d 324, 329 (Mo.Ct.App. 1980). To prove negligence or medical malpractice a plaintiff must also establish causation. The Court finds that plaintiff has failed to prove either that the medical staff attending to plaintiff at the medical center deviated from the standard of care required of it or that plaintiff's neural problems were cause by either the second surgery or the postoperative care he received, both of which were necessitated by the leakage caused by the first surgery.

As to the first surgical procedure, defendant's experts, Drs. Casteneda and Brenner, testified that the standard of care rendered during and after the operation was well within the required standard of care. This leakage did not occur for two to four days postoperatively. There was no credible evidence that the leak developed because the surgical techniques involved were improper or because another technique might or should have been used. Plaintiff has failed to establish any negligence or breach of care in the performance of the first surgery.

Plaintiff alleges that he has suffered nerve damage as a consequence of the second surgery. Defendant's experts testified that the care rendered during and after this operation was also well within the required standard of care. Furthermore, plaintiff's own expert, Dr. Cohen, testified that the second procedure, as described in the operative notes, was adequate. Plaintiff presented no evidence that those involved in the second surgery acted with other than the skill and proficiency commonly exercised by the ordinarily careful, skillful, and prudent surgeon engaged in similar practices under similar circumstances. The Court finds they did not act negligently.

Furthermore, plaintiff has not established that his injury is the result of damage to one or more of the major nerves [1] affecting the right lower extremity. Defendant's experts testified that if either of these nerves were damaged during surgery the injury would have been manifested by a twitching or jerking immediately upon injury as well as severe pain in the affected area after the anesthesia wore off. Thus, this type of injury is one of immediate onset rather than one that manifests a progressive worsening. The medical chart reflects that plaintiff complained of and was medicated for incision and wound pain postoperatively. It also indicates that plaintiff had general edema from his trunk to his toes in both extremities as well as scrotal edema.[2] There is, however, no reference to thigh, leg, or lower right extremity pain at this time in the medical chart or in the daily records and summaries maintained by plaintiff's treating physicians and the medical center's nursing staff.

The first indications from plaintiff that he had pain in his right leg was in September of 1986, when plaintiff was readmitted to the hospital for kidney rejection complications. Kathleen Carney, a physician's assistant, testified that, as part of her duties, she saw plaintiff daily while he was an inpatient and recorded any complaints. Her records reflect that plaintiff first mentioned leg pain on September 28, 1986, and leg pain below the knee on November 7, 1986.[3] This evidence does not support the claim of major nerve injury at the time of surgery. The testimony of Dr. Cohen, plaintiff's expert, is not in conflict with this conclusion. Dr. Cohen testified that he found the following entries in Shaffer's medical chart significant in supporting the immediacy of Shaffer's pain following surgery:

a) 4/17/86—swollen and distended abdomen

b) 4/20/86—back pain medication administered

c) 4/22/86—feet and legs edematous

d) 5/18/86—right flank and back pain

e) 5/19/86—complaints of back pain

f) 5/20/86—CT scan recommended for back pain diagnosis

g) 8/4/86—right groin pain in area of kidney

h) 9/28/86—pain in the leg

These entries, however, are more consistent with the conclusion that plaintiff's leg

---

1. These nerves would be the femoral or sciatic (the "sleeve" of the peroneal) nerves. They lie posterior to the incision site and behind a large muscle mass. They are not located where any retraction was used or where any sutures were likely to be placed.

2. Given the gravity of plaintiff's renal condition and the procedures undertaken to remedy it, it was to be expected that plaintiff would experience pain and discomfort, particularly around the incision and kidney area. This pain is not the basis of plaintiff's complaint.

3. The femoral nerve, which plaintiff asserts was injured, affects muscles to the knee but not below the knee.

pains began in September of 1986 than they are with plaintiff's assertion that the pain was an immediate result of the surgery.

Plaintiff has not conclusively demonstrated that he had leg pain immediately following surgery. Further, he has not shown that the immediate pain and discomfort he did have was related to nerve damage rather than to the normal post-operative repercussions of major renal surgery. For these reasons, the Court finds there is no causal relationship between the second surgery and plaintiff's present neuropathy.

Finally, Shaffer alleges negligence and malpractice by the medical center staff for failing to adequately treat him after learning the results of a nerve conduction test. Specifically, plaintiff relies on evidence that Dr. Rosenthal, a neurology resident at the time, noted in the hospital record that, if the surgical procedure caused the nerve injury, it would most likely be from entrapment of a nerve by a suture line or from retraction. Plaintiff argues that his treating physicians did not consider "whether re-exploration of the wound in search of a binding suture line" should be done and this failure caused him irreparable harm. The Court finds no merit in this claim.

Dr. Casteneda, testified that, within days of getting the results, the nerve conduction report and its results were discussed in a conference of the treating physicians. At that time they weighed the consequences of and indications for exploratory surgery along with the potential complications in light of the plaintiff's medical status. The decision was made not to do exploratory surgery. Although plaintiff's expert, Dr. Cohen, testified that Shaffer should have been seen in both pain and rehabilitation clinics, this testimony does not establish a failure to provide the requisite standard of care. Physicians are entitled to a wide discretion in the practice of their profession, and there was no evidence presented that plaintiff was treated in a manner "clearly against the course of treatment recognized as correct by the profession generally." *Miller v. Scholl,* 594

S.W.2d at 329 (citing *Haase v. Garfinkel,* 418 S.W.2d 108, 114 (Mo.1967)). The record reflects that Shaffer received care and treatment for his leg pain from his physicians and other hospital employees in the form of medication, physical therapy, and various specialty consults. His present problem is intertwined with his multitudinous medical problems, and it is not within the province of this Court to second guess the experts in delineating particular care for particular problems.

Plaintiff has failed to establish both that the medical center staff acted in a manner inconsistent with the standards in the medical community and that any actions taken in conjunction with the treatment of his renal condition caused the problem with his leg. Thus, his claims under these theories must fail. He has, however, also asserted two claims under the doctrine of *res ipsa loquitur.*

*Res ipsa loquitur* is a rule of evidence permitting a trier of fact to draw a rebuttable inference that the causes of the occurrences do not ordinarily exist in the absence of negligence on the part of one in control. *Hasemeier v. Smith,* 361 S.W.2d 697, 700 (Mo.1962). In Missouri, the doctrine of *res ipsa loquitur* is generally not applicable in medical malpractice cases. *Id.* Furthermore, where it is applicable, it does not provide a remedy simply because "an unfavorable result ensues from treatment or surgery even though the unfavorable result ensues from treatment or surgery even though the unfavorable result may be a rare one in the particular case...." *Id.* Thus, in Mr. Shaffer's first surgery, no inference of negligence can be made solely from the adverse result of the leak at the suture site, and there was no evidence that such a leak does not ordinarily occur except for negligence. Physicians are not absolute guarantors of a perfect result. See *Miller v. Scholl,* 594 S.W.2d at 329; *Lawton v. Jewish Hosp.,* 679 S.W.2d 370, 373 (Mo.App.1984).

With regard to the second surgery, the experts, including the plaintiff's own expert, testified that there are other plausible explanations for the present injury.

These include lumbosacral involvement with possible hip infection, lumbosacral lesion, retroperitoneal hematoma, diabetes mellitus, spondylolisthesis, abdominal fluid pressure from renal failure, and neuropathy of undetermined etiology. Additionally, several of these alternatives are related to pre-existing and/or original illnesses. In Missouri, a medical practitioner cannot be found negligent for injuries resulting from a patient's original injuries or illnesses. *Lawton v. Jewish Hosp. of St. Louis,* 679 S.W.2d at 373. Due to these possible alternative causes for the injury, the plaintiff has failed to demonstrate that, but for some negligent action by the medical center staff, he would not have this injury.

In conclusion, the plaintiff has established that he presently suffers from a painful neuropathy to the lower right extremity. Plaintiff, however, has not established through a preponderance of the evidence that the defendant, through its treating physicians, acted negligently, failed to render the requisite standard of care, or that their acts or omissions in surgical procedures or medical treatment caused his present neuropathy to occur or to worsen. Finally, the plaintiff has not established the absence of any other cause for his ailment sufficient to allow the Court, under the doctrine of *res ipsa loquitur,* to draw an inference that the injury would not have occurred in the absence of negligence by the defendant. Accordingly, judgment shall be entered for the defendant.

An appropriate judgment will accompany this memorandum.

### JUDGMENT

In accordance with the memorandum filed this date and incorporated herein,

IT IS HEREBY ORDERED and ADJUDGED that defendant have judgment against plaintiff and that plaintiff's claim for relief is DISMISSED with prejudice with costs to be taxed against the plaintiff.